## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| STERLING MARQUETTE WILSON | ) | No. 07 B 17012 |
| and TAMMY LYNN WILSON | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MEMORANDUM OPINION ON
## OBJECTION TO CONFIRMATION

This proceeding relates to the Chapter 13 bankruptcy case filed by Sterling Marquette

Wilson and Tammy Lynn Wilson (the "Debtors"). On September 26, 2007, Ford Motor Credit

Company LLC ("Ford"), filed an objection to confirmation of the Debtors' modified Chapter 13

plan, dated November 27, 2007 (the "Plan"). On December 12, 2007, Ford amended its

objection to confirmation. On December 17, 2007, the Debtors filed their Response to Ford's

Objection. Each party waived its right to offer additional evidence on the issues raised in the

objection.

Ford objects to two provisions of the Debtors' Plan.[1] Ford first objects to Section F of the

---

[1] In paragraph 8 of Ford's amended objection, Ford argues that the Debtors' Plan would allow the Debtors to obtain a release of Ford's lien and a discharge of personal liability without Ford receiving full payment on its secured claim. Ford withdrew this argument, however, because Section G.4 of the Debtors' Plan provides that "[t]he plan shall not be deemed completed until all secured claims have been paid in full with interest as provided for in the plan." (Response, Ex. B, Modified Chapter 13 Plan, dated 11/27/07 § G.4). As a result, the Debtors could not obtain a release of Ford's lien and a discharge without full payment to Ford on its secured claim.

Debtors' Plan, which provides that the trustee pay creditors in an order of priority. (Response, Ex. B § F). The first in the order of priority is the trustee's fee, next are the current mortgage payments, and third are the payments on Ford's secured claim. Ford argues that the Debtors cannot separately classify secured claims and states that it should be in the same priority level as the mortgage payments. Ford also argues that Section F of the Debtors' Plan may result in a lack of adequate protection to Ford. Second, Ford objects to Section E.2 of the Debtors' Plan, which provides that the trustee shall increase or decrease current mortgage payments upon notice from the mortgage holder. (Response, Ex. B § E.2). Ford argues that it should receive notice of any change in payments to the mortgage holder and an opportunity to object to such change. Ford also asserts that an increase in payments to the mortgage holder may result in a lack of adequate protection for Ford. Ford's objections to confirmation are overruled except as to Ford's request that it receive notice of any changes in payments to the mortgage holder under Section E.2 of the Debtors' Plan.

### JURISDICTION AND VENUE

This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334. The case has been referred to this Court under Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue is proper under 28 U.S.C. § 1409(a).

### UNDISPUTED FACTS

1. On September 18, 2007, the Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtors also filed their Chapter 13 plan on that date.

2. Ford is a creditor of Debtors with respect to a debt secured by a 2005 Ford Explorer,

2

said vehicle has a net remaining balance of $20,843.74 plus interest.  (Amended Objection to

Confirmation ¶ 1; Response ¶ 1).

     3.  On November 27, 2007, the Debtors filed a modified Chapter 13 plan (the "Plan").

     4.  Section E.2 of the Debtors' Plan states:

> 2. *Current mortgage payments*.  Payable according to the terms of the mortgage,
> as set forth below, beginning with the first payment due after the filing of the case.
> Each of these payments shall be increased or decreased by the trustee as necessary
> to reflect changes in variable interest rates, escrow requirements, or similar
> matters; the trustee shall make the change in payments as soon as practicable after
> receipt of a notice of the change issued by the mortgage holder, but no later than
> 14 days after such receipt.  The trustee shall notify the debtor of any such change
> at least 7 days before putting the change into effect.  Any current mortgage
> payment made by the debtor directly to the mortgagee shall be deducted from the
> amounts due to be paid to the trustee under this plan.

(Response, Ex. B § E.2).

     5.  The Debtors have first and second mortgage loans from TCF Bank.  The Plan provides

for a monthly payment to TCF Bank of $881 on the first mortgage loan and $100 on the second

mortgage loan.  (Response, Ex. B § E.2(a) and (b)).  The first mortgage loan has a fixed interest

rate.  (Response, Ex. A, Real Estate and Non-real Estate Secured and Unsecured Fixed or

Variable Rate Note & Security Agreement, p. 1).

     6.  Section E.3 of the Plan provides for fixed monthly payments of $744 to Ford.

(Response, Ex. B § E.3).

     7.  Section D.1 of the Plan requires the Debtors to pay the trustee $2,450 per month for ten

months and $2,625 per month for forty-eight months.  (Response, Ex. B § E.3).

     8.  Section F of the Debtors' Plan states as follows:

> **F. Priority**.  The trustee shall pay the amounts specified in Section E of this Plan
> in the following order of priority, with claims in a given level of priority reduced

3

proportionately in the event of a deficiency in plan payments: (1) trustee's authorized percentage fee; (2) current mortgage payments; (3) secured claims listed in Section E.3; (4) priority claims of the debtor's attorney; (5) mortgage arrears; (6) priority claims other than those of the debtor's attorney; (7) specially classified non-priority unsecured claims; and (8) general unsecured claims.

(Response, Ex. B § F).

9. Any facts contained in the discussion below shall constitute additional undisputed facts.

## DISCUSSION

Ford objects to two separate provisions of the Debtors' Plan. First, Ford objects to Section F of the Debtors' Plan, which creates an order of priority for payment to creditors. Second, Ford objects to Section E.2 of the Debtors' Plan, which requires the trustee to increase or decrease payments to the Debtors' mortgage holder to reflect changes in variable interest rates, escrow requirements, or other similar matters.

### Section F of the Debtors' Plan

First, Ford objects to Section F of the Debtors' Plan for two different reasons. Section F requires the trustee to pay amounts owed to creditors in the following order of priority: first, the trustee's authorized percentage fee; second, the current mortgage payments; and third, payments to secured creditors listed in Section E.3. Payments to Ford are in this third priority level. Ford's first argument is that Section F violates § 1322(a)(3) of the Bankruptcy Code because it fails to provide the same treatment within a particular class. Ford asserts that it is in the same class as TCF Bank as they are both secured creditors, therefore, payments to Ford should be in the second priority level with the payments to TCF Bank. Ford states that the Debtors have no authority for classifying secured creditors at different priority levels. Second, Ford argues that the priority

4

levels in Section F of the plan may result in a lack of adequate protection to Ford under
1325(a)(5)(B)(iii)(II).

Conversely, the Debtors argue that the Bankruptcy Code does not prohibit different
priority levels among secured creditors.  Moreover, the Debtors state that because each secured
claim is unique, the Debtors must classify each secured claim separately.  The Debtors cite the
case of In re Whitfield in support of their position.  290 B.R. 302 (Bankr. E.D. Mich. 2003).
Addressing Ford's adequate protection argument, the Debtors argue that it is unlikely that the
order of priority will leave Ford without adequate protection for its collateral.  The Debtors
indicate that their payments to TCF Bank are only $981 of their total payment of $2,450.  As a
result, the Debtors argue that there is a substantial cushion over the amount owed to TCF Bank.
Thus, the Debtors state that it is unlikely that Ford will suffer from a lack of adequate protection
by being third priority rather than second priority.  Finally, the Debtors assert that if Ford is
lacking adequate protection at some point in the future as a result of its third priority position, it
can move to modify the automatic stay.

Section 1322(a)(3) of the Bankruptcy Code states "[t]he plan shall– .       .       .
.      (3) if the plan classifies claims, provide the same treatment for each claim within a
particular class."  11 U.S.C. § 1322(a)(3).  Subsection (b) of § 1322 states "[s]ubject to
subsections (a) and (c) of this section, the plan may– (1) designate a class or classes of unsecured
claims, as provided in section 1122 of this title, but may not discriminate unfairly against any
class so designated."  11 U.S.C. § 1322 (b)(1).  While § 1322(b)(1) specifically allows
classification of unsecured claims and prohibits unfair discrimination against a class of unsecured
claims, the Bankruptcy Code is silent regarding such issues as they relate to secured claims.  The

Debtors cite In re Whitfield as authority for their separate classification of secured claims. 290 B.R. 302. In that case, the secured creditor objected to a provision of the debtor's plan which classified the secured creditor and the mortgage holder in different classes and treated them differently. Id. at 303. The secured creditor argued that the debtor had to treat all secured creditors the same under § 1322(a)(3). Id. at 304. The opinion rejected the secured creditor's argument and stated that a debtor usually places each secured claim in its own class. Id. A debtor must create a separate class for each secured creditor because each creditor has unique collateral, requires different monthly payments, and charges different interest rates. Id. Other opinions also support the Debtors' position that secured creditors can, and usually must, be classified separately. See Bank One, NA v. Leuellen (In re Leuellen), 322 B.R. 648, 657-58 (S.D. Ind. 2005); In re Powell, 15 B.R. 465, 477-78 (Bankr. N.D. Ga. 1981); In re Jones, 101 B.R. 593, 594 (Bankr. W.D. Mo. 1989).

Section 1322(b)(2) of the Bankruptcy Code provides additional support for allowing the separate classification of secured creditors. Section 1322(b)(2) is a special provision for home mortgage lenders. It states:

> (b) Subject to subsections (a) and (c) of this section, the plan may–
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). This provision provides a justification for debtors to treat home mortgage lenders differently than other secured creditors.

It is held that a debtor may create different classes of secured creditors. Thus, the priority

levels in Section F of the Debtors' Plan do not violate § 1322(a)(3) or any other provision of the

Bankruptcy Code. Ford's objection to Section F because it classifies Ford separately from TCF

Bank is overruled.

Ford's second argument against Section F of the Debtors' Plan relates to adequate

protection under § 1325(a)(5)(B)(iii)(II). The Debtors' Plan must meet the requirements of §

1325 in order to be confirmed. Section 1325(a)(5) of the Bankruptcy Code sets out the

requirements for confirmation of a debtor's plan as related to secured creditors. It states as

follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if–
>
> . . . .
>
> (5) with respect to each allowed secured claim provided for by the plan–
>    (A) the holder of such claim has accepted the plan;
>    (B)    (i) the plan provides that–
>            (I) the holder of such claim retain the lien securing such claim until the earlier of–
>                (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>                (bb) discharge under section 1328; and
>            (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
>            (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>            (iii) if–
>                (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>                (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>    (C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a)(5).

In this case, Ford argues that its third level of priority under Section F of the Debtors'
Plan may result in a lack of adequate protection under § 1325(a)(5)(B)(iii)(II).  Ford has not
offered, however, any evidence that its payment of $744 under the Plan is not enough to provide
adequate protection.  Nor has Ford moved to modify the automatic stay on the basis of lack of
adequate protection.  Rather Ford argues that the order of priority in Section F of the Plan may
deny Ford adequate protection in the future.  Section 1325(a)(5) does not require denial of a plan,
however, for the possibility of lack of adequate protection in the future.  The priority levels in
Section F of Debtors' Plan do not deny Ford adequate protection.  The Debtors' Plan complies
with § 1325(a)(5).  The Plan provides for equal monthly payments of $881 and $100 to TCF
Bank and equal monthly payments of $744 to Ford.   Ford's objection that Section F of the
Debtors' Plan does not provide Ford with adequate protection is overruled.

### Section E.2 of the Debtors' Plan

Ford's second argument in its objection to confirmation relates to Section E.2 of the
Debtors' Plan.  Section E.2 of the Debtors' Plan requires the trustee to increase or decrease
payments to the mortgage holder to reflect changes in variable interest rates, escrow
requirements, or similar matters.  The mortgage holder must notify the trustee of the need for a
change in payments and the trustee then modifies the payments accordingly.  Ford objects to
Section E.2 because it does not provide notice to Ford if there is a change in payments to the
mortgage holder, TCF Bank, nor does it provide Ford an opportunity to object to such change in
payments.  Ford asserts that Section E.2 allows the Debtors to modify their Plan without meeting
the requirements of § 1329 of the Bankruptcy Code, which addresses the modification of a plan

8

after confirmation. Finally, Ford argues that an increase or decrease in payments to TCF Bank under Section E.2 may cause Ford to suffer a lack of adequate protection.

The Debtors argue that if a mortgage payment increase at some point in the future denies Ford adequate protection, Ford could file a motion for relief from stay at that time. The Debtors indicate, however, that it is unlikely that an increase in mortgage payments would effect Ford because the Debtors have a fixed interest rate on their first mortgage loan. As a result, the Debtors assert any increases in payments to TCF Bank would be minimal increases for real estate taxes. Furthermore, the Debtors again point to the substantial cushion in the plan payments; TCF Bank is to receive $981 of the Debtors' $2,450 monthly payment. Finally, the Debtors assert that the possibility that Ford may lack adequate protection in the future is not a basis to deny confirmation.

Ford's argument that Section E.2 should provide notice to Ford has merit. Ford should receive notice of a change in the payment amount to TCF Bank under Section E.2 of the Debtors' plan. An amendment to one creditor's claim which could effect the adequate protection rights of another creditor's claim should be noticed. The Debtors must add a provision to Section E.2 of their Plan which provides notice to Ford's attorney if payments to TCF Bank are increased or decreased. Ford's argument that an increase or decrease under Section E.2 of the Debtors' Plan may result in a lack of adequate protection is rejected, however, because Ford has not offered any proof that it currently lacks adequate protection. All other objections of Ford are overruled.

## CONCLUSION

For the foregoing reasons, Ford's objections to confirmation are overruled except as to Ford's request that the Debtors amend their Plan to provide for notice to Ford if payments to the

mortgage holder, TCF Bank, are increased or decreased pursuant to Section E.2 of the Debtors'

Plan. The Debtors must amend their Plan to provide notice to Ford of any changes in the

payments to TCF Bank under Section E.2 of the Debtors' Plan.

ENTER.

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 29th day of January 2008